Case Numbers 23-3204 and 23-3237 BorgWarner PDS Irapuato v. Parker Hannifin Corporation Argument not to exceed 15 minutes per side. Mr. Ratliff, you may proceed. Good afternoon. My name is Adam Ratliff. I'm counsel for the appellant BorgWarner. If it pleases the court, I've reserved three minutes for rebuttal. May it please the court. The district court erred by elevating its interpretation of parole evidence over unambiguous contract language. In June 2021, Parker Hannifin started supplying automotive parts to BorgWarner. Parker immediately asked for a price increase on those parts and the parties negotiated for several months. Until in November... Let me ask you this. You've got a claim that in October, whenever it was, that you had essentially renegotiated, sent in the revised master agreement and they agreed to it by shipping or whatever. Do we need to know what the contract looked like in February in order, or does the court or jury need to know that before they evaluate whether the change was made or the new contract adopted in October? No, Your Honor. The only thing that the court would need to know is, was the prior contract, did it cover the same subject matter? Because that is one of the conditions for a superseding contract. It has to mirror the same subject matter. But that's not an issue here. But why, if their terms governed in February, then their modification provisions would apply. If your terms and conditions were in force, then presumably yours would. Or if it's an implied in fact contract under the UCC, because neither of you really agreed on it, then whatever the UCC's modification provision is would apply, right? So wouldn't we have to know what happened in February? Well, in some cases you might, Your Honor, but not in this case. Because the modification provision that, granting Parker's argument that their terms prevailed, which is what the district court found, that the provision that they relied on the district court cited, no modification except in writing provision, that wouldn't bar the parties from entering into superseding contracts as they did here for several reasons. First of all, as we've discussed in the briefing, that's not what the provision says. The provision in their terms said these terms, capital T, referring to, which is a defined term, the terms and conditions attached to Parker's offer of sale can't be modified except for in a writing signed by parties. Well, you admit that there was a contract at one time because you fulfilled your part of it, right? There is no doubt that the parties starting at the latest in June 2021 were contracting. Borgwarner was purchasing automotive parts from Parker, yes. And you're just saying it was breached on whatever date it was? That's right, Your Honor. Between then and when the parties first formed a contract in January 2022 when both parties had a disagreement over who might have breached, the parties entered into a new contract in November 2021. That's our argument. And it was the terms of that new contract in 2021 that Parker then breached. And for their part, they don't dispute that to the extent that Borgwarner's purchase order, the revised master agreements issued in November 2021 governed that they breached and that Borgwarner should have been entitled to summary judgment. Was there a termination provision in the revised master agreement that would have allowed them to terminate with some notice or did the contract have to go on forever as long as this program was around? It's the latter, Your Honor. The revised master agreement said two things as to their ability to terminate. First of all, that it had a duration for the life of the customer's program here, that's Ford's F-150 program, 250, excuse me. And then second, section 12 of Borgwarner's terms said the seller can't terminate before that. So their attempt to terminate was a breach there and they haven't disputed that. It just seems odd to me that they didn't, I don't think they agreed to your terms the first time around. I mean, they were pretty clear about not wanting them. Why would they have agreed to them the second time around? I mean, I don't know. They didn't seem to put up a big fight about it. So maybe they did. But I don't know that they necessarily agreed to it. I guess they shipped the product. Is that your point? Is that you just sent them the form and they said, here's the product and you have a deal? Well, essentially, Your Honor, it wasn't quite that simple. I mean, there was a pricing dispute. The reason that they agreed to the revised master agreements, in part, we'd submit, is because they got a price increase. And that's one nuance about their argument. They have never said the revised master agreements were meaningless because they've said they were pricing updated, pricing adjustments, pricing updates. And that's because they want the higher prices that were in the revised master agreements. They just want to ignore every other provision of the revised master agreements, including the superseding clause. So here, Your Honor, we just issued updated forms and they performed. That is essentially what happened. But the reason that they haven't challenged performance as acceptance here is I think that they can't. It's not, they had five weeks with this form, never objected. There were months of negotiations leading up to us sending it. And then when Board Warner sent it, it said in no unequivocal terms, in writing, on November 26th, we're not accepting the second part of your price increase. We'll give you the first. We're going to issue new agreements reflecting this. And five minutes later, they sent the documents titled master agreements. They had an integration clause. They had a fixed pricing clause. Let me ask you this question. The district court obviously did something completely different. We may or may not agree. If we disagreed, this argument, would it be appropriate for us to resolve this issue now? Or would we remand it to the district court to take a look at it? Is it a jury question if there's any dispute about whether the new agreement was a, whether those terms govern? The court should resolve this issue. This was our primary argument in moving for summary judgment. And Parker's opportunity to challenge acceptance as a factual matter, which of course, as I stated, for several reasons we don't think that they can and why they didn't. But their opportunity to challenge as a factual matter that they accepted the revised master agreements would have been in response to our motion for summary judgment. They could have said this is a fact issue. They could have said, well, whatever argument they might have but their performance wasn't acceptance. But they didn't raise those arguments. This was our primary argument and summary judgment. So this court... You're waiting for us to make that decision without sending it back for a question of fact before the district court. Because you're saying there is no fact question, right? You're right, Your Honor. And they haven't said that there's a disputed, that there's any disputes as to material facts here. They're just interpreting the facts differently. Their argument rests on the context. And again, the parties don't dispute what happened. That's why we went to early summary judgment. Of course, both sides reserved their ability to say in response to the other side's summary judgment motion, hey, hey, we're going too fast here. There are factual issues. They've raised an argument that we need to dispute as a factual matter. But neither party did that because these are two sophisticated commercial parties. Let me ask you this question about this type of arrangement. So you've got some kind of contract, someone shipping goods pursuant to this contract. Then we get a new set of terms because there's a price increase. You're saying, well, they agree to the new contract because they shipped goods under the new contract. But they were already shipping goods. Like that was the party's kind of relationship was to ship goods. So why is it that the conduct that they were already doing is assent to a new agreement just because you stuck the piece of paper in there and they kept going? Your Honor, I mean, if they had stopped shipping goods and said, hey, we're not shipping any more goods because we don't agree to this new deal. I assume you guys would have been pretty mad about that and probably would have run into court. We would have disputed, but the dispute would have been over the February 2021 issue. You're right, Your Honor. That's my point, though. If they're shipping under the February arrangement, then sticking in another agreement and saying, okay, now this, your prior conduct of shipping goods means you now agree to this new contract. I'm not sure. I guess I need a little bit more. What is the assent that we get other than just that? Well, I want to be clear, Your Honor. Our argument is that a seller with a document stuck in front of them always can challenge acceptance as a factual matter. So as a hypothetical, we send these documents to the corporate office in Ohio and two minutes later they load a truck in Mexico. In that case, they could argue, certainly as a factual matter, I don't know which way that case would come out, but that loading the truck in Mexico could not have been a manifestation of intent to assent to and accept the offers in Ohio. But of course the court doesn't have to slice it that thin here because it wasn't two minutes, it was five weeks. And so that argument from Parker that this is how we saw the world, we were already shipping, that was already our contract, so we were going to continue shipping, that's a fine argument as of November 25, 2021. Did they reserve the right to increase the cost of these parts if a situation came about, you know, like inflation or other things? Well, Your Honor, not under anyone's terms, no. That's one of our alternative arguments is even under their terms. They only reserve the right to raise the price for raw materials. But under Borg Warner's terms, under the terms of the revised master agreements, no, they could not adjust prices. As parties to a long-term agreement often assume the risk of inflation, lowering costs, rising costs, that's one of the things that they assumed, the risks they assumed. So returning to the acceptance issue. So you're saying that in November of 2021 they agreed to a new agreement where they were not going to be able to raise price again and the contract wasn't going to end for any foreseeable future? Your Honor, these programs are quoted, well, yes, that is what I'm saying. These programs are usually quoted. It seems a little odd that they would have, I mean, I don't know. It's not uncommon in the automotive industry, Your Honor, actually. These programs are usually five to six years long. There are sometimes escalator or de-escalator clauses, and actually the most common clause is a productivity bonus when the price will actually go down a couple of steps after a couple of years. We didn't have that here. But these fixed prices are not terribly uncommon. There, of course, hasn't been any claim of force majeure. There's other sort of common law defenses they might have had if they needed to change price if it was threatening their business. They haven't made any of those arguments here. But the revised master agreement, really the only difference was the price, wasn't it? That's right. That's what a new superseding contract looks like. And that's because that's what they asked for, Judge Davis. They asked for a higher price. So what Board Warner said is, here's your higher price. We're going to send you new agreements. Five minutes later they did. And here are the other terms that come along with that. And they've never made an argument, because they couldn't, that they didn't read the revised master agreements, that they were ambiguous, or that for some other reason the integration clause doesn't apply. Thank you. Thank you. You'll have your rebuttal. Good afternoon, Your Honors. May it please the Court, Robert Ware for Parker Hannafin Corporation. Your Honors, Board Warner brought this case for a temporary restraining order to force Parker to maintain price levels essentially indefinitely at unsustainable levels for Parker Hannafin. Judge Oliver considered that, denied the temporary restraining order. The parties then went to cross motions for summary judgment. Judge Oliver, again, considered all of the facts and circumstances, again decided that Parker Hannafin's terms controlled and entered judgment against Board Warner on its claims. Do we need to know what the contract looked like in February or March, whenever, in order to evaluate whether what happened in October was valid or not? Yes, Your Honor, absolutely you do need to consider all of the facts and circumstances to determine if a contract was formed in November. The other side has argued that the parole evidence rule would prevent you from doing that. We think that's essentially a bootstrap argument. They are looking at an integration clause in a contract that they have not established is exactly the contract. You must look at the facts and circumstances, including what the terms and conditions were of an ongoing relationship, in order to determine if there is any superseding contract. Absolutely we would say yes. And we would say there is no superseding contract, because those facts and circumstances very clearly indicate no intention for the parties to supersede the agreement that was in place under Parker's terms and conditions. So you're wanting to go on the original contract. There's no modification at all. Is that what you're saying? Yes, Your Honor. We're going on the original contract. There was a price change, but that doesn't modify the original contract. The price was changed, as Parker was entitled to do, under the terms and conditions of Parker's agreement. I'm sorry, go ahead. One thing that I'm not following, and maybe your answer is because in November you just didn't reach any additional agreement, but it seems when you look at the course of dealings leading up to February of 2021, Parker Hannafin was pretty vigilant about saying, hey, we're not accepting that, here's our terms and conditions. They'd send something back, here's our terms and conditions again. You're sending us this letter of intent, here's our terms and conditions again. So then when they send something in November of 2021 saying, hey, we'll agree to these prices for October, we're not agreeing to anything for January, then there's silence. Is that because in your mind, well, we're still at the February contract? Or why didn't Parker Hannafin at that point then also do what it had consistently been doing if the position was that our terms and conditions are going to govern this contract? Your Honor, the reason for that is this was essentially, from Parker Hannafin's perspective, a record change on behalf of Board Warner. And that is exactly what all of the facts and circumstances indicate. What Board Warner said in their motion for summary judgment, this is footnote three of their motion for summary judgment, page ID 546, with respect to these revised master agreements. They are identical to those issued to Parker on February 24, 2021 in every way except for the price. They were simply printed after the price had been updated in Board Warner's system. So they do not reflect the original February 2021 prices. All that happened here is someone at Board Warner went into the computer system, changed the price term, and hit print. That did not indicate to Parker Hannafin that they had agreed to an entirely new set of terms and conditions. Yeah, but then they're saying that we've got this integration provision in here now. And that was something that previously obviously was not in play. Correct, Your Honor. That integration provision was in the terms that were the original February master agreements that Board Warner entered into. Those just simply didn't apply. Similar situation here. This is a document. Yes, they're throwing a document back to us. But that doesn't mean that the terms automatically apply. There was no formation of a contract. But there was no I'm not sure it was entirely clear whose terms were governing. I mean, I know you say it was your terms and conditions. I'm not exactly sure that that your original offer is an offer. Frankly, it says it's tentative. I'm not sure they ever accepted it because they said we are governed by our terms, which seems like a rejection. I mean, I'm kind of so they send the form out in November, the revised master agreement, it's the exact same thing that they had sent in February, which you guys had said on a couple of occasions, we don't agree with this. But I don't know, maybe they thought that, hey, look, all I'm doing is sending you, there's no controversy here, I'm just sending you the same thing that we agreed to in February. And you're thinking, we didn't agree to this in February. But I don't know. I mean, it seems like neither side had ironed out exactly by June of 2021 what were the terms of the contract that you guys were doing business under. And in that case, we default to the UCC, I think. But I don't know. You would default to the UCC if there was no contract at the outset. If there's a contract at the outset under Parker's terms and conditions, then our position would be that it is quite clear. I agree with you. I completely agree with you. In order for you to be correct, you had to have made an offer, despite the fact that it said it was tentative and subject to revision, and they had to accept that offer, despite the fact that they said acceptance is on our terms, and we want these things, and you're crossing them out. I mean, I find it hard to believe that there's a meeting of the minds on your terms or on their terms, honestly. I don't know what meeting of the minds there was. All I know is somebody started shipping goods and paying for them, so you got some kind of deal. But that's what I'm wondering. If you're under the UCC at that point, and then we fast forward to November, and they say, oh, by the way, it's a price increase. Here's our terms, which they say, oh, it's just the same stuff that you agreed to in February, I would think that you would say, no, wait a minute. This has never been part of our contract. See our conduct back in February. We didn't agree to this. So, I mean, I don't know. It doesn't seem like you're putting up much of a fight in November about whether this revised master agreement is the agreement or not. Well, Your Honor, a couple of responses to that. First of all, what we're talking about here is getting dangerously close to what's called the last shot rule. And the last shot rule was expressly overridden. It is not the law that you can simply shoot off a document and then there's performance after that and say, well, my document was the last one sent, therefore, you're it. That is not the law. So just sending a document, even if the other side doesn't object to it, is not going to get you a contract. And again, our position is that you need to look at the facts and circumstances. You need to look at these November agreements were dated February. They didn't even change the date on the agreements. If this is a superseding agreement. Right, but doesn't that make sense? It makes sense because they thought it was the same contract that they had originally agreed to. In other words, if I say, hey, look, I'm just updating the price. So I'm going to send you the same form that I think is governing our relationship. It turns out that you don't agree with that vehemently. And you never agreed to it. You guys never agreed to that. But they're saying here you go. Now, I don't know. Maybe it's nefarious. Maybe they thought, oh, you know, our thing doesn't govern. We better, you know, let's try to slip one past them or something. I don't know. That's why I'm curious about why. I mean, yeah, OK, fine. So they dated in February. But it seems to me that's consistent with a story that would be, well, this is what's governed our relationship the whole time. I'm just going to date it February. Well, the reason we don't think it's consistent is because they're claiming it's a superseding agreement. So if this is a new agreement, you would think they would have considered that and put the date of the new agreement on there. You're saying there was no superseding agreement. That's correct, Your Honor. That's our position. There is no superseding agreement because all they did was make a record change in their records, hit print, and send out the form. I would also like to say there were forms being sent all throughout this relationship. Parker sent its terms and conditions on multiple occasions. It would send order acknowledgments when it received orders from Borg Warner containing Parker's terms. So if we're going to be in a situation where... During the February to November period, you're always attaching your terms and conditions. Correct, Your Honor. We're attaching our terms and conditions. There's no evidence of Borg Warner ever objecting to that. So our position is it's not up to the court to look at each of these and say, well, there's a new contract here, there's a new contract here, there's a new contract here. What we look at is this is an ongoing relationship. It started in February of 2021 and that is the framework under which you are going to evaluate whether anything that came after rises to the level of an entirely new agreement with new terms and conditions. We don't think the November agreements come anywhere close to that level. You raised the prices on some of these parts because of inflation or whatever and they continued to buy them, but they didn't like it, right? Correct, Your Honor. That's correct. And we were entitled to raise prices under the Parker terms and conditions. There's two provisions. They were entitled to raise prices for raw material increases on 30 days notice. They're entitled to raise prices for any reason at all on 60 days notice. So, and Parker gave plenty of notice, more than enough notice of those price increases. So it was entitled to raise prices under its agreement. And that is what Parker did and Borg Warner ultimately paid for the first level price increase in October. It continued to object in January. It continued to order products and then when Parker said, wait a minute, you haven't paid us what the price, the new price is, that's when Borg Warner went to court and said, no, no, no, you have to, we're going to get a TRO forcing you to supply at the lower price level. And so that's the context of this discussion. The November agreements did not supersede and there's no indication of that. I'd also like to point, there was an argument made that in the reply brief of Borg Warner that in November was the culmination of the party's negotiations on price. That is not true. And I'd like to point the court to a document in the record which is Exhibit F to the verified complaint. This is page ID number 43. And this is a letter from Borg Warner to Parker dated February 1, 2022. This is when the parties are having a dispute. Borg Warner is reciting its position. But with regard to what happened in November, they state, but at that time we made it clear that we do not accept or agree to your plan to increase prices again on January 1, 2022. Fine, that's true. They were continuing to object. Parker continued to take the position that those price increases were occurring. The next sentence says, we did, however, indicate our willingness to continue price discussions at that time. So even in Borg Warner's mind, there were going to be continued discussions. Borg Warner did not view those November agreements as the end. This is now what the contract is. They say in this letter, they were expecting to continue to discuss the price increase. As it happened, Parker Hanifin wasn't willing to give on that, and Parker Hanifin insisted that the price increase take place. But this evidence shows you that Borg Warner... I could say, look, for now, this is our agreement. I'm not saying I'm not going to talk to you down the road. I mean, everybody's going to talk at some point about it's a business relationship. Maybe it's ongoing. Hopefully it's ongoing. Maybe there's another project you're going to work on. I'm sure that the price is going to be an issue. You're going to talk about it. It doesn't mean that whatever you agree to isn't what you agree to. I mean, I hear you, but I don't know if that's neither here nor there about whether the formal negotiation on price was going to keep going. Granted, Your Honor. That's true. In a vacuum, that is true. But what I was saying, I was responding to an argument that this document, the November document, was viewed by Borg Warner as the culmination of a set of negotiations that ended right there, and then we're sending out our agreement to confirm that. What this document does is undermine that position. I would agree. In some other context, it's possible that they could say, we're going to continue to talk, but here's our agreement. But that's not what their position is. Is there a real good Ohio case that you're depending upon to uphold your statements here? Well, the case that I would point to in terms of parole evidence, which is what they're arguing, is the Fairview case, which basically says, which should be obvious, that you don't apply parole evidence, you don't apply an integration clause until you have determined that there is, in fact, a new contract. This is not a parole evidence case in the sense that anybody's saying there's some ambiguity, right? And that we have to look at parole evidence to see what the meeting of the minds was? That's correct, Your Honor. The record is pretty streamlined in this case. Correct. We're talking about whether any agreement was formed, and therefore parole evidence doesn't apply. That's exactly what we would say here. Your Honor pointed out earlier... But what's your response to the question about why wasn't your conduct enough to accept the terms in November? I mean, there are cases that say that, right? That conduct can be acceptance. You continue to ship, or whatever. So why does that not take care of that issue? Two responses, Your Honor. My time is up, but I will very quickly... The first response is, as Your Honor pointed out, the conduct was exactly the same before and after. So you can't draw an evidentiary conclusion based on the conduct afterwards. So that alone tells you that, in this context, conduct should not be viewed as performance. And I'll stop there. Is that a jury question? If we were to disagree that... I'm not saying we are, but let's say we said, we don't think Parker's terms governed. We think this is a UCC contract. What do we do in November? Does it go to a jury? We think that the evidence is clear even under the UCC. You would get to the same point. We think you can affirm based on the UCC. Okay. Understood. Thank you. Rebuttal? Can you respond to two things? One, the argument that you never objected when they were sending their stuff sometime in that 2021 interim, and that this is just a revival of the last shot rule, which, of course, has been disavowed in Ohio. Yes, Your Honor. First, as to never objecting to their terms, that's expressly what BorgWarner's letter of intent was. Going all the way back, they start with their February 4, 2021 quote. The first response from BorgWarner was six days later. It was a letter of intent that said, we are nominating you. We choose you, Parker, as our supplier. We will only contract according to a purchase order that incorporates BorgWarner's terms and conditions. Saying that we are only going to contract according to something different than what you offered, Parker, is an express rejection under Ohio law. We did object. The initial master agreements contained the same language. What about, okay, so you reject, that's an argument that would say we never accepted Parker's offer and that their terms and conditions are out. Like I said before, I'm not sure your terms and conditions are in, honestly, so that gives us the UCC. Your opponent's argument, what I took was, hey, there were times that we also attached our terms and conditions when we were shipping sometime in June or in July or in August or whenever it was. Why is that not the same as when you signed your revised master agreement in November? Because attaching your terms to an email is not an offer to contract. Our revised master agreements were expressly an offer to contract. They had price, they had quantity, they said this is a new contract. Saying what they did is they would attach, they would say, we are accepting your release, here are our terms again. That's not an offer to contract. So I think, Your Honor, this goes also to where my friend left off. You're saying it was an offer, a new offer to contract at the new price? The revised master agreements, yes. Why was it dated in February then? Because it was printed on the same form. It was an update. That's exactly what new superseding contracts are. They're an update to a previous contract. I don't think there's any law, and my friend hasn't cited any, that backdated contracts somehow can't be a superseding agreement. And so I do want to leave where my friend left off, which is if we are in a world where the UCC governed, the gap fillers governed before November, they lose. Because their whole context argument, their whole argument and the district court's basis for finding that the revised master agreements couldn't have been new offers accepted relies on the premise that Parker's terms controlled and they were allowed to adjust prices and that they were allowed to terminate. So without that context, their arguments to defeat the revised master agreements go away. And the revised master agreements were new contracts accepted by the performance. I hear you. I'm not sure I agree with that. I think maybe their terms wouldn't govern, but I'm not sure that it's crystal clear that even the revised master agreement was accepted in November. I don't know. We'll go back and look at it. And I appreciate your arguments, both sides. But it's a tough case, because oddly, if we're in the UCC world with two sophisticated parties that both had opportunities to kind of agree on what the terms were going to be, and yet we're going to end up perhaps in the UCC, I find that to be pretty interesting. Judge Davis, did you have a question? I don't. Okay. Thank you.